IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **FIFTH THIRD BANK CHICAGO,** a banking corporation, </br></br> Plaintiff, </br></br> v. </br></br> **KENNETH A. NELSON,** a Florida resident, and the **KENNETH A. NELSON REVOCABLE TRUST, a/k/a KENNETH A. NELSON TRUST DATED FEBRUARY 18, 1981** </br></br> Defendants. | FILED </br> MAY 9, 2008    YM </br> 08CV2715 </br> Case No.: </br> JUDGE KENNELLY </br> MAGISTRATE JUDGE NOLAN |

## COMPLAINT

COMES NOW the Plaintiff, Fifth Third Bank Chicago, a banking corporation, (the "Plaintiff") by and through Gregory J. Jordan, Peter Schmidt and Jean Soh and the law firm of Polsinelli Shalton Flanigan Suelthaus PC, its counsel, and for its claims against the defendants, Kenneth A. Nelson, ("Nelson") and the Kenneth A. Nelson Revocable Trust, a/k/a the Kenneth A. Nelson Trust Dated February 18, 1981 (the "Trust"), states as follows:

1. There exists complete diversity of citizenship between the parties on each side. Fifth Third Bank is a citizen of Ohio, the state in which its main office is located. Nelson is a citizen of Florida. The Trust is a trust formed in Illinois.

2. In diversity cases, federal district courts have personal jurisdiction over parties when a court of the state in which the district court sits has personal jurisdiction. This court has personal jurisdiction over Nelson and the Trust because each transacts business within the State of Illinois, (735 ILCS § 5/2-209(a)(1)) and each made or performed a contract or promise substantially connected with the State of Illinois (735 ILCS § 5/2-209(a)(7).

3. This case involves a dispute between citizens of different states and involves a matter in controversy in excess of $75,000, exclusive of interest and costs. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332.

4. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

5. The Plaintiff is a banking corporation licensed to do business in Illinois.

6. Nelson is a Florida resident and is or at the time of the extensions of credit by the Plaintiff referenced herein was affiliated with Ken Nelson Automall, Inc. (the "Automall").

7. The Trust is an Illinois trust and is or at the time of the extensions of credit by the Plaintiff referenced herein was an owner of and affiliated with the Automall.

8. Automall applied to the Plaintiff for certain loans as follows: (a) a new vehicle floor plan line of credit in the maximum amount of Four Million Dollars ($4,000,000) ("New Vehicle Floor Plan") and (b) a used vehicle floor plan line of credit in the maximum amount of Five Hundred Thousand Dollars ($500,000) ("Used Vehicle Floor Plan") (collectively the "$4,500,000 loans").

9. The Plaintiff advised Automall that it was unwilling to make the $4,500,000 loans to Automall unless Nelson and the Trust guaranteed the payment of principal and interest and any other charges under the Note to be made by Automall in favor of the Plaintiff and the performance of all of the covenants and undertakings to be performed and observed pursuant to the provisions thereof.

## Count I – Breach of Guaranty by Nelson

10. The Plaintiff realleges and incorporates paragraphs 1 through 9 of the General Allegations as paragraph 10 of Count I.

11. To induce the Plaintiff to make the above-referenced loan to Automall, Nelson unconditionally, absolutely and irrevocably agreed to guarantee to the Plaintiff the full and prompt payment and performance (whether at maturity by acceleration or otherwise) of any and all liabilities of Automall owed to the Plaintiff arising under the $4,500,000 loans.

12. As evidence of his agreement as set forth in paragraph 11, Nelson executed a certain All Encompassing Guaranty (the "Nelson Guaranty"). A true and correct copy of the Nelson Guaranty is attached as Exhibit "A" and incorporated herein by this reference.

13. In reliance upon the Nelson Guaranty and in consideration therefore, the Plaintiff advanced funds for the benefit of Automall through the $4,500,000 loans.

14. Automall thereafter applied to the Plaintiff for a Revolving Note executed on or about December 4, 2006 in the original principal amount of $250,000 (the "Revolving Note").

15. Pursuant to the terms of the Nelson Guaranty, Nelson unconditionally guaranteed to the Plaintiff the full and prompt payment when due under any additional loan made to Automall by the Plaintiff, which would include the Revolving Note.

16. In reliance upon the Nelson Guaranty and in consideration therefore, the Plaintiff advanced funds for the benefit of Automall through the Revolving Note.

17. Automall has failed to pay the amounts due under the $4,500,000 loans and the Revolving Note, and the Plaintiff, after all appropriate credits for payments received to date have been made, is owed as of April 30, 2008 the following amounts

|  | Principal | Interest | Late Charge | Total |
|---|---|---|---|---|
| New Vehicle Floor Plan | $ 3,354,759.38 | $ 31,609.99 | $ 752.53 | $ 3,387,121.90 |
| Used Vehicle Floor Plan | $ 640,252.00 | $ 5,045.21 | $ 121.05 | $ 645,418.26 |
| Revolving Line of Credit | $ 250,000.00 | $ 892.36 | $ 0.00 | $ 250,892.36 |

239133

    Total Debt                  <u>$ 4,283,432.52</u>

18.  The sums set forth in paragraph 17 are exclusive of accruing interest and attorneys' fees and expenses incurred by the Plaintiff under the $4,500,000 loans, the Revolving Note and the Nelson Guaranty.

19.  The Plaintiff has made demand upon Nelson to pay the indebtedness referenced above pursuant to the Nelson Guaranty, but Nelson has failed and refused to do so.

20.  The Plaintiff has performed all conditions precedent under its contractual agreement with Nelson.

21.  Nelson has breached his obligation under the Nelson Guaranty by refusing and continuing to refuse to perform his obligations thereunder.

22.  The Plaintiff, as a direct and proximate result of the breach of the Nelson Guaranty, has been damaged as of April 30, 2008 in the amount of Four Million Two Hundred Eighty-Three Thousand Four Hundred Thirty-Two Dollars and Fifty-Two Cents ($4,283,432.52) plus accruing interest and attorneys' fees and expenses incurred by the Plaintiff under $4,500,000 loans and the Revolving Note.

WHEREFORE, the Plaintiff, Fifth Third Bank Chicago, a banking corporation, demands judgment against the defendant, Kenneth A. Nelson, in the amount of Four Million Two Hundred Eighty-Three Thousand Four Hundred Thirty-Two Dollars and Fifty-Two Cents ($4,283,432.52) plus accruing interest and attorneys' fees and expenses incurred by the Plaintiff, Fifth Third Bank Chicago, under the $4,500,000 loans, the Revolving Note and the Nelson Guaranty and for such other relief as this Court deems just and proper.

**Count II – Breach of Guaranty by The Trust**

23. The Plaintiff realleges and incorporates paragraphs 1 through 9 of the General Allegations as paragraph 23 of Count II.

24. To induce the Plaintiff to make the above-referenced loan to Automall, the Trust unconditionally, absolutely and irrevocably agreed to guarantee to the Plaintiff the full and prompt payment and performance (whether at maturity by acceleration or otherwise) of any and all liabilities of Automall owed to the Plaintiff arising under the $4,500,000 loans.

25. As evidence of the agreement as set forth in paragraph 24, the Trust executed a certain All Encompassing Guaranty (the "Trust Guaranty"). A true and correct copy of the Trust Guaranty is attached as Exhibit "A" and incorporated herein by this reference.

26. In reliance upon the Trust Guaranty and in consideration therefore, the Plaintiff advanced funds for the benefit of Automall in through the $4,500,000 loans.

27. Automall thereafter applied to the Plaintiff for a Revolving Note executed on or about December 4, 2006 in the original principal amount of $250,000 (the "Revolving Note").

28. Pursuant to the terms of the Trust Guaranty, the Trust unconditionally guaranteed to the Plaintiff the full and prompt payment when due under any additional loan made to Automall by the Plaintiff, which would include the Revolving Note.

29. In reliance upon the Trust Guaranty and in consideration therefore, the Plaintiff advanced funds for the benefit of Automall through the Revolving Note.

30. Automall has failed to pay the amounts due under the $4,500,000 loans and the Revolving Note, and the Plaintiff, after all appropriate credits for payments received to date have been made, is owed as of April 30, 2008 the following amounts

|                         | Principal      | Interest     | Late Charge | Total          |
|-------------------------|----------------|--------------|-------------|----------------|
| New Vehicle Floor Plan  | $ 3,354,759.38 | $ 31,609.99  | $ 752.53    | $ 3,387,121.90 |
| Used Vehicle Floor Plan | $ 640,252.00   | $ 5,045.21   | $ 121.05    | $ 645,418.26   |
| Revolving Line of Credit| $ 250,000.00   | $ 892.36     | $ 0.00      | $ 250,892.36   |
| Total Debt              |                |              |             | $ 4,283,432.52 |

31. The sums set forth in paragraph 30 are exclusive of accruing interest and attorneys' fees and expenses incurred by the Plaintiff under $4,500,000 loans, the Revolving Note and the Trust Guaranty.

32. The Plaintiff has made demand upon the Trust to pay the indebtedness referenced above pursuant to the Trust Guaranty, but the Trust has failed and refused to do so.

33. The Plaintiff has performed all conditions precedent under its contractual agreement with the Trust.

34. The Trust has breached his obligation under the Trust Guaranty by refusing and continuing to refuse to perform his obligations thereunder.

35. The Plaintiff, as a direct and proximate result of the breach of the Trust Guaranty, has been damaged as of April 30, 2008 in the amount of Four Million Two Hundred Eighty-Three Thousand Four Hundred Thirty-Two Dollars and Fifty-Two Cents ($4,283,432.52) plus accruing interest and attorneys' fees and expenses incurred by the Plaintiff under the $4,500,000 loans and the Revolving Note.

WHEREFORE, the Plaintiff, Fifth Third Bank Chicago, a banking corporation, demands judgment against the defendant, the Kenneth A. Nelson Revocable Trust, a/k/a the Kenneth A. Nelson Trust Dated February 18, 1981 in the amount of Four Million Two Hundred Eighty-Three Thousand Four Hundred Thirty-Two Dollars and Fifty-Two Cents ($4,283,432.52) plus accruing

-7-

interest and attorneys' fees and expenses incurred by the Plaintiff, Fifth Third Bank Chicago, under the $4,500,000 loans, the Revolving Note and the Trust Guaranty and for such other relief as this Court deems just and proper.

          Respectfully submitted,
          **FIFTH THIRD BANK CHICAGO,**
          **a banking corporation,**

    By   /s/ Gregory J. Jordan
          One of Its Attorneys

Gregory J. Jordan (ARDC #6205510)
Peter J. Schmidt (ARDC #6256638)
Jean Soh (ARDC #6285187)
Polsinelli Shalton Flanigan Suelthaus PC
Two Prudential Plaza
180 N. Stetson Avenue, Ste. 4525
Chicago, IL 60601
(312) 819-1900
(312) 819-1910 (Facsimile)

```
08CV2715
JUDGE KENNELLY      YM
MAGISTRATE JUDGE NOLAN
```

# Exhibit "A"

## ALL ENCOMPASSING GUARANTY

To:    Fifth Third Bank (Chicago)                                    Date: September [__], 2002

In consideration of and to induce Fifth Third Bank (Chicago) ("Lender") to make loans or extend credit to any one or all of the undersigned ("Guarantors"), such loans or credit being evidenced by one or more promissory notes, loan agreements, security agreements, mortgages, assignments, UCC Financing Statements, or other security instruments (herein generally called "paper"), each and every Guarantor, jointly and severally, unconditionally guaranties to Lender, its successors and assigns, that each Guarantor will, promptly and faithfully perform, pay and discharge all of the joint and several obligations of each other Guarantor hereunder (Guarantor in its capacity as a borrower from Lender may be called "Borrower" herein) owing to Lender, irrespective of any invalidity therein, the unenforceability thereof or the insufficiency, invalidity or unenforceability of any security therefor, and without Lender first having to proceed against any such Guarantor in its capacity as a borrower, any other Guarantor, or otherwise, or any other person, firm or corporation, or having to liquidate any paper or any security therefor, to pay on demand all sums due or to become due to Lender from any such Guarantor under any loan agreement, any promissory note, mortgage, or any other instrument executed pursuant thereto (including this Guaranty), and to pay on demand all losses, costs, expenses, and reasonable attorneys' fees which Lender may suffer by reason of the default of a Guarantor either in its capacity as a borrower of or Guarantor to Lender and, further agree that so long as any obligation of a Guarantor remains unpaid, to furnish to Lender promptly upon request a financial statement setting forth in reasonable detail, the assets, the liabilities and net worth of the respective person or entity.

1.    Guarantors, as primary obligors, jointly and severally, hereby unconditionally guarantee to Lender the full and prompt payment when due of all Indebtedness, as defined below, of the Guarantors due and to become due the Lender and the full, prompt and faithful discharge of all present and future obligations owed to or assigned to Lender. The Lender may have immediate absolute recourse against any Guarantor for full and immediate payment of the Indebtedness at any time after the Indebtedness, or any part thereof, has not been paid in full by any due date therefor or at its maturity (whether at fixed maturity or maturity accelerated by reason of a demand for payment from any Guarantor or a default under the terms of the instrument governing such Indebtedness or any instrument securing the same). The Lender may have immediate absolute recourse against any Guarantor for full and immediate performance of any other obligation owed or assigned to Lender at any time that any Guarantor fails, upon demand, to perform said obligation in accordance with any loan document or agreement executed with or for the benefit of tender.

2.    The term "Indebtedness" shall mean any and all indebtedness, liabilities and obligations of every kind, nature and description whatsoever, owed to Lender by any one or more Guarantors, whether direct or indirect, absolute or contingent, whether now due and owing, or which may hereafter, from time to time, be or become due and owing, whether heretofore or hereafter created or arising, including all Indebtedness evidenced by any promissory note(s) now or hereafter executed and delivered by any Guarantor to the Lender and any and all renewals, extensions, increases or modifications thereof, and including, without limitation, reasonable attorney fees, costs and expenses incurred by Lender in connection with the enforcement of this Guaranty, and any and all obligations to Lender.

3. This is a guarantee of payment, and not of collection, and Guarantors therefore agree that the Lender shall not be obligated prior to seeking recourse against or receiving payment from any Guarantor, to take any action whatsoever against any Guarantor, or, without limiting the generality of the foregoing, to do any of the following (although the Lender may do so, in whole or in part, at it sole option), the performance of which are hereby unconditionally waived by Guarantor:

(a) Take any steps whatsoever to make demand upon or to collect from Borrower or to file any claim of any kind against any Guarantor; or

(b) Take any steps whatsoever to accept, perfect the Lender's interest in, foreclose upon or realize on collateral security, if any, for the payment of the Indebtedness, or any other guarantee of the Indebtedness; or

(c) In any other respect exercise any diligence whatsoever in collecting or attempting to collect the Indebtedness by any means.

4. Guarantors' liability for payment of the Indebtedness shall be joint and several, and absolute and unconditional, and nothing whatever except actual full payment to the Lender of the Indebtedness shall operate to discharge Guarantors' liability hereunder. Accordingly, the Guarantors unconditionally and irrevocably waive each and every defense which, under principles of guarantee or suretyship law, would otherwise operate to impair or diminish the liability of Guarantor for the Indebtedness. Without limiting the generality of the foregoing waiver, Guarantors agree that none of the following acts, omissions or occurrences shall diminish, release, or impair the liability of any Guarantor in any respect (all of which acts, omissions or occurrences may be done without notice to Guarantor of any kind):

(a) Any extension, modification, indulgence, compromise, settlement or variation of any of the terms of the Indebtedness;

(b) This discharge, disaffirmance or release of any of the Indebtedness, whether by reason of bankruptcy or insolvency laws or otherwise or after an assignment for the benefit of creditors, appointment of a receivership, dissolution or liquidation;

(c) The acceptance or release by the Lender of any collateral security or other Guaranty, or any settlement, compromise or extension with respect to any collateral security or other Guaranty or other Guarantors hereunder;

(d) The application or allocation by the Lender of payments, collections or credits on the Indebtedness or any other obligations of any Guarantor to the Lender;

(e) The creation of any new Indebtedness by any Guarantor;

(f) The making of a demand, or absence of demand, for payment of the Indebtedness, or giving, or failing to give, any notice of dishonor or protest or any other notice;

(g) The death of any Guarantor as to the obligations of such Guarantor's estate under this Guaranty or of any other Guarantor hereunder;

(h) The validity, legality or enforceability of the Indebtedness or this Guaranty;

(i) Any law, regulation or decree now or hereafter in effect that might in any manner affect any of the terms or provisions of the Indebtedness or any of the rights of Lender under the Indebtedness or this Guaranty as against any Guarantor or as against any other party to any part of the Indebtedness;

(j) The merger or consolidation of any Guarantor into or with any corporation or any sale or transfer by any Guarantor of all or any part of its property;

(k) Any other circumstance whatsoever that might in any manner vary the risk of any Guarantor hereunder or otherwise constitute a legal or equitable discharge of a surety or guarantor.

5. Each Guarantor unconditionally and expressly waives:

(a) Any subrogation to the rights of the Lender against any Guarantor, until the Indebtedness has been paid in full;

(b) Any acceptance of this Guaranty;

(c) Any set-offs or counterclaims against the Lender which would otherwise impair the Lender's rights against any Guarantor; and

(d) Any notice of the disposition of any collateral security and any right to object to the commercial reasonableness of the disposition of any such collateral security.

6. This Guaranty shall inure to the benefit of the Lender and its successors and assigns, including each and every holder or owner of any of the Indebtedness guaranteed hereby. In the event that there shall be more than one such holder or owner, this Guaranty shall be deemed a separate contract with each holder and owner. In the event that any person other than the Lender shall become a holder or owner of any of the Indebtedness, each reference to the Lender hereunder shall be construed as if it referred to each such holder or owner.

7. Guarantors agree that recourse may be had against each of its or his/her earnings and separate property for all of Guarantors' obligations under this Guaranty.

8. Guarantors warrant and represent to the Lender that any and all financial statements concerning their personal financial condition delivered to the Lender are true and correct in all material respects as of the date of such statements, and if such statements are not current, that there has been no material adverse change in the financial situation of Guarantors from the date of such statement to the date of delivery of this Guaranty to the Lender. Guarantors

\cle\clients\Fifth Third Bank\KNAG\All Encompassing Guaranty (3) (9BB.401) 8/27/02    3

acknowledge that in accepting this Guaranty, the Lender has relied upon any such financial statements, and Guarantors agree to provide the Lender a statement of their current financial condition in a form satisfactory to the Lender at least annually upon the Lender's request.

9.  The liability of each Guarantor executing this Guaranty shall be joint and several and the term "Guarantor" shall mean each and all such Guarantors. Masculine terms, as used herein, shall also refer where applicable to the feminine gender and the neuter gender and the singular reference shall also include the plural of any word, if the context so requires.

10. No modification, rescission, waiver, release or amendment of any provision of this Guaranty shall be made or accepted, except by a written agreement duly executed by Guarantor and Lender.

11. This Guaranty and all rights and obligations hereunder, including matters of construction, validity and performance, shall be governed by the laws of the State in which this Guaranty is executed.

12. THIS GUARANTY IS FREELY AND VOLUNTARILY GIVEN TO THE LENDER BY GUARANTORS, JOINTLY AND SEVERALLY, WITHOUT ANY DURESS OR COERCION, AND AFTER EACH GUARANTOR, JOINTLY AND SEVERALLY, HAS EITHER CONSULTED WITH COUNSEL OR BEEN GIVEN AN OPPORTUNITY TO DO SO, AND GUARANTOR, JOINTLY AND SEVERALLY, HAS CAREFULLY AND COMPLETELY READ ALL OF THE TERMS AND PROVISIONS OF THIS GUARANTY.

*[Signatures on Following Page]*

IN WITNESS WHEREOF, the undersigned Guarantors have caused this instrument to be duly executed the day and year first above written.

GUARANTORS:

KEN NELSON AUTO MALL, INC.,
an Illinois Corporation

By: _____
    Its President


KEN NELSON AUTO PLAZA, INC.,
a Delaware Corporation

By: _____
    Its President


_____
KENNETH A. NELSON


_____
KENNETH A. NELSON, TRUSTEE, UNDER THE KENNETH A. NELSON TRUST DATED FEBRUARY 18, 1981


_____
RICHARD CURIA


CRANK LLC

By: _____
KENNETH A. NELSON, TRUSTEE
UNDER THE KENNETH A. NELSON TRUST
DATED FEBRUARY 18, 1981, MEMBER

By: _____
    RICHARD CURIA, MEMBER

## ACKNOWLEDGMENTS

STATE OF ILLINOIS )
                  ) SS.
COUNTY OF  LEE    )

The foregoing instrument was acknowledged before me this 6 day of September, 2002, by  Kenneth Nelson , the President of **KEN NELSON AUTO MALL, INC.**, an Illinois Corporation on behalf of the corporation.

[OFFICIAL SEAL
PAM S EHREDT
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/07/04]

Notary Public  Pam S. Ehredt

My Commission Expires:  2/7/04


STATE OF ILLINOIS )
                  ) SS.
COUNTY OF  LEE    )

The foregoing instrument was acknowledged before me this 6 day of September, 2002, by  Kenneth Nelson , the President of **KEN NELSON AUTO PLAZA, INC.**, a Delaware Corporation on behalf of the corporation.

[OFFICIAL SEAL
PAM S EHREDT
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES:02/07/04]

Notary Public  Pam S. Ehredt

My Commission Expires:  2/7/04

STATE OF ILLINOIS  )
                   ) SS.
COUNTY OF LEE      )

The foregoing instrument was acknowledged before me this 6 day of September, 2002, by **KENNETH A. NELSON**.



Notary Public Pam S. Ehredt

My Commission Expires: 2/7/04


STATE OF ILLINOIS  )
                   ) SS.
COUNTY OF LEE      )

The foregoing instrument was acknowledged before me this 6 day of September, 2002, by **KENNETH A. NELSON, TRUSTEE, UNDER THE KENNETH A. NELSON TRUST DATED FEBRUARY 18, 1981**.

Notary Public Pam S. Ehredt

My Commission Expires: 2/7/04

STATE OF ILLINOIS )
COUNTY OF **LEE** ) SS.
)

The foregoing instrument was acknowledged before me this **6** day of September, 2002, by **RICHARD CURIA**.

Notary Public *Pam A. Ehredt*

My Commission Expires: 2/7/04

STATE OF ILLINOIS )
COUNTY OF **LEE** ) SS.
)

The foregoing instrument was acknowledged before me this **6** day of September, 2002, by **KENNETH A. NELSON, TRUSTEE UNDER THE KENNETH A. NELSON TRUST DATED FEBRUARY 18, 1981**, a Member of **CRANK LLC**, an Illinois Limited Liability Company on behalf of the company.

Notary Public *Pam A. Ehredt*

My Commission Expires: 2/7/04

STATE OF ILLINOIS  )
                   ) SS.
COUNTY OF  LEE     )

The foregoing instrument was acknowledged before me this 6 day of September, 2002, by **RICHARD CURIA**, a Member of **CRANK LLC**, an Illinois Limited Liability Company on behalf of the company.

Notary Public  Pam S Ehredt

My Commission Expires:  2/7/04